IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NICOLE HINES, | § | |
| | § | MDL NO. 2543 |
| *Plaintiff*, | § | 1:14-MD-2543-JMF |
| | § | |
| v. | § | HON. JESSE M. FURMAN |
| | § | |
| GENERAL MOTORS, LLC, | § | CIVIL ACTION NO. |
| | § | |
| *Defendant.* | § | COMPLAINT |
| | § | |
| | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

COME NOW Plaintiff, Nicole Hines (hereinafter the "Named Plaintiff" or "Plaintiff"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1.      The Named Plaintiff's cause of action is brought solely against GENERAL MOTORS, LLC ("New GM").  The Named Plaintiff does not assert any causes of action against General Motors Corporation ("Old GM").

2.      Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same.  Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage.  New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein,

via the mind of the employees, officers, managers, as well as via books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG). Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM. Further, as identified therein, the Plaintiff has claims for crashes involving an Old GM vehicle ("GM vehicles") that caused personal injury, loss of life, or property damage and New GM is, therefore, liable to the Named Plaintiff.

**PARTIES**

3.      Plaintiff Nicole Hines is, and was at all times relevant hereto, a resident of Franklinton, NC.

4.      Plaintiff asserts claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on October 29, 2014, involving Plaintiff's 2008 Pontiac G6 (VIN 1G2ZG57B984243435) (hereinafter, "vehicle".)

5.      The Named Plaintiff's personal injury claim involves a Defective Vehicle, specifically a 2008 Pontiac G6. Defendant New GM is a Delaware limited liability company. On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009. Pursuant to the Agreement and other orders of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if not most, of Old GM's employees including, on information and belief, most of the same senior-level management, officers, and directors. New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

6.      Under the Purchase Agreement, New GM assumed liability for crashes after the closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss of life, or property damages.

7.      New GM also assumed product liabilities of Old GM, including certain statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

8.      In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

9.      At all times relevant to the claims in this lawsuit, Old GM and New GM were in the business of developing, manufacturing, and marketing cars throughout the United States generally, and specifically in the Plaintiff's state of citizenship.  New GM has a network of authorized retailers that sell its vehicles and parts throughout the United States.  New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

10.      This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiff and New GM are citizens of different states.

## FACTUAL BACKGROUND

### General Background

11.    Plaintiff Nicole Hines was driving a 2008 Pontiac G6 on SR 1127 at US 1 in Franklinton, North Carolina when she was driving through an intersection and another vehicle failed to yield the right of way and struck the front of her vehicle.  The accident resulted in frontal damage to her vehicle and her airbags failed to deploy.  Clearly, there was a defect in the airbag system/passenger restraint system since the airbags failed to deploy.

12.    An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.  New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

13.    Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is running, it operates safely, and its critical safety systems (such as its airbag systems and passenger restraint systems) work properly until such time as the driver shuts down the vehicle.  Moreover, a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

14.    To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with defective airbag systems and passenger restraint systems in General Motors brand vehicles.

15.     In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects.  As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

16.     On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect.  Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

17.     On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents".  To that end, New GM acquired notice of the safety-related defects contained in Old GM's files, including numerous engineering reports, investigative reports, failure analyses, technical service bulletins, and other documentation concerning the common defects in the airbag systems/passenger restraint systems described herein.

18.     Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

19.     The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.   Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.   49 C.F.R. §576.5 to §576.6.

20.     The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident."  49 U.S.C. §30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related.  49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c). Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles.  49 C.F.R. §577.5(a), §577.7(a).  Violating these

notification requirements can result in a maximum civil penalty of $15,000,000.  49 U.S.C. §30165(a)(1).

21.     Defendant New GM used several processes to identify safety issues, including the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and Problem Resolution Tracking System ("PRTS").  The TREAD database, used to store the data required for the NHTSA early warning reports, was the principal database used by Old and New GM to track incidents related to Old and New GM vehicles.  The database included information from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external surveys; (iv) field reports from employees who bought Old and New GM vehicles and from Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database maintained by the Old and New GM legal staff to track data concerning complaints filed in court. A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to identify spikes in the number of accidents or complaints related to various Old and New GM vehicles.   The PRTS is a database that tracks engineering problems identified in testing, manufacturing, through warranty data and through customer feedback.  The PRTS process involves five steps:  identification of the issue, identification of the root cause, identification of a solution, implementation of the solution, and feedback.

22.     Because the same employees carried out the TREAD Act obligations at Old GM and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they were in fact required to do so.  This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

23.     In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiff alleges that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability.  With respect to Plaintiff's independent claims, Plaintiff does not seek to hold Defendant New GM liable for the actions of Old GM.  Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

24.     Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

25.     New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiff's vehicle, including the following:

- THE CONTACT OWNS A 2008 PONTIAC G6. THE CONTACT STATED THAT WHILE DRIVING AT 25 MPH, THE CONTACT CRASHED INTO THE REAR END OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND NO INJURIES WERE REPORTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 100,000. (11/06/2016)

- ON 05/11/16 AT APPROXIMATELY 5:49 PM, THIS 2008 PONTIAC G6, WHILE TRAVELING IN A FORWARD DIRECTION ON A PUBLIC ROAD AND IN DRY SURFACE CONDITIONS, MODERATE TEMPERATURES, WAS BROUGHT TO A RAPID STOP DUE TO CHANGING TRAFFIC CONDITIONS. THE DRIVER WAS RESTRAINED VIA THE SEAT BELT. FOUR SECONDS LATER, THIS 2008 PONTIAC G6 WAS STRUCK IN THE REAR BY A 2005 PONTIAC VEHICLE TRAVELING AT MODERATE SPEED AND POSSIBLE DRIVER INATTENTION. SIGNIFICANT REAR, FRONTAL, UNDERSIDE AND SIDE AREAS OF BOTH VEHICLES WERE DAMAGED. BOTH VEHICLES WERE NOT DRIVABLE AND WERE TOWED FROM THE ACCIDENT SCENE TO A SECURE LOT.  THE 2008 PONTIAC G6 AIRBAGS DID NOT INFLATE UPON IMPACT OR THEREAFTER. THE 2005 PONTIAC AIRBAGS(2) DID INFLATE AND ALSO SUFFERED A PASSENGER SIDE BROKEN FRONT WINDSHIELD. THE OCCUPANTS AND ONE CANINE IN ONE AND OR BOTH VEHICLES DID SUFFER UNKNOWN INJURIES.  THE 2008 PONTIAC G6 HAD BEED SERVICED UP TO AND INCLUDING WITHIN ONE YEAR BY A GM DEALERSHIP FOR VARIOUS RECALLS AND OVER THE HISTORY OF THE VEHICLE. (05/11/2016)

- THE CONTACT OWNED A 2008 PONTIAC G6. WHILE DRIVING 25 MPH, STRONG WINDS AND RAIN FORCED THE VEHICLE TO CRASH INTO A CEMENT BARRIER. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE LOWER BACK, HIP, AND CHEST THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 70,000. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. (02/25/2016)

- THE CONTACT OWNS A 2008 PONTIAC G6. WHILE DRIVING APPROXIMATELY 30 MPH, THE CONTACT WAS INVOLVED IN A CRASH. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE AIR BAGS FAILED TO DEPLOY; HOWEVER, THE AIR BAG LIGHT ILLUMINATED. THE VEHICLE WAS TOWED FROM THE SCENE. THE DEALER COULD NOT DIAGNOSE THE FAILURE. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS UNKNOWN. (09/30/2011)

- WAS GOING 5 MPH BECUASE OF WEATHER, HIT ICE, ENDED UP DOING APPROXIMATELY 25-30 MPH IN A SLIDE. THREW ME IN A DITCH FRONT FIRST. DID 5671.65 IN DAMAGES ON THE FRONT END ALONE. 63 PARTS REPLACED. AIRBAGS AND ONSTAR DID NOT ACTIVATE. IF MY HUSBAND AND I WERE NOT WEARING OUR SEAT BELTS WE WOULSVE BEEN THROWN OUT THE WINDSHIELD. WHOLE ENTIRE FRONT END WAS IN THE DITCH AND BACK PASSENGER TIRE WAS IN MID AIR. WHEN MY HUSBAND WENT TO GET OUT OF VEHIICLE HE FELL OUT OF THE CAR AND LANDED UNDER THE CAR. THERE ARE PICTURES TAKEN BY THE STATE HIGHWAY PATROL AS WELL AS MYSELF. HUSBAND AND I WERE SORE FROM THE ACCIDENT BUT DID NOT GO TO THE EMERGENCY ROOM. (02/16/2015)

- THE CONTACT OWNS A 2008 PONTIAC G6. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE REAR PASSENGER SIDE TIRE BLEW CAUSING THE DRIVER TO LOSE CONTROL OF THE VEHICLE AND CRASH INTO A TREE. THE DRIVER AND PASSENGER SIDE FRONT AIR BAGS FAILED TO DEPLOY. THE PASSENGER WAS KILLED ON IMPACT. THE DRIVER SUFFERED A COLLAPSED LUNG, BROKEN SHOULDER AND INJURIES TO THE ARM AND HEAD. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO THE CONTACT'S INSURANCE COMPANY FOR FURTHER INVESTIGATION. THE APPROXIMATE FAILURE MILEAGE WAS 98,000. (09/13/2014)

- ON 2/20/2014 I WAS TRAVELING AND WAS HIT ON MY BACK RIGHT SIDE, MY CAR SPUN OUT ACROSS 3 LANES AND END UP FACING ON COMING TRAFFIC ON THE OPPOSITE SIDE OF THE STREET WHERE MY CAR HIT AND RAN OVER A SMALL POLE. THOUGH ALL THESE EVENTS THAT OCCURRED WHICH LEFT MY CAR AT A TOTAL LOSS MY AIR BAGS FAILED TO DEPLOY. I THINK THERE WAS SOMETHING MECHANICALLY WRONG WITH MY AIR BAGS AS WELL AS MY BRAKES, WITH DIDN'T ASSIST ME BY MUCH IF ANY. (02/20/2014)

- I WAS DRIVING ON ICE WHEN MY PONTIAC G-6 FRONT WHEEL DRIVE STARTED SLIDING TO THE LEFT FROM BACK TO FRONT AND FLIPPED END OVER END AND THEN ROLLED 2 MORE TIMES AND LANDED ON THE PASSENGERS SIDE DOOR THE AIRBAGS DID NOT DEPLOY AND THE DRIVERS SEAT BELT DID NOT LOCK

UP. I ABLE TO EASILY UNFASTENED THE SEAT BELT ON THE DRIVERS SIDE OF THE CAR WHICH WAS AROUND ME. (12/31/2013)

- AS DRIVER APPROACHED A 2 LANE CONSTRUCTION ZONE, THE VEHICLE STARTED TO DRIFT TO THE RIGHT. DRIVER ATTEMPTED TO CONTAIN VEHICLE IN TRAFFIC LANE BUT THE STEERING WHEEL WAS NOT RESPONSIVE. AT SOME POINT THE POWER STEERING ASSISTANCE MODULE REACTIVATED BUT ONLY MANAGED TO DRIVE THE VEHICLE INTO THE CONCRETE BARRIERS ON BOTH SIDES OF THE HIGHWAY RESULTING IN HEAVY FRONT-END PASSENGER SIDE DAMAGE AND CONTACT DAMAGE TO ALL CORNERS OF THE VEHICLE. DESPITE TRAVELING BOTH BACK AND FORTH ACROSS TWO LANES SEVERAL TIMES AND MAKING CONTACT WITH THE BARRIERS EACH TIME, NEITHER FRONT AIR BAG DEPLOYED. DRIVER'S HEAD CAME IN CONTACT WITH HIS SIDE WINDOW CAUSING TEMPORARY LOSS OF CONSCIOUSNESS. PASSENGER'S AIR BAG COVER WAS KNOCKED ASKEW BUT AS NOTED DID NOT ACTIVATE. EMT'S ADMINISTERED MEDICAL ASSISTANCE AT THE SCENE, BUT DID NOT TRANSPORT. VEHICLE WAS TOWED FROM SCENE AND SUBSEQUENTLY JUDGED "TOTALED". I PURCHASED THIS VEHICLE EXACTLY ONE WEEK AND 5 HOURS BEFORE THIS EVENT. NOTICE I DO NOT CALL IT AN ACCIDENT: THIS VEHICLE AND OTHERS FROM THIS MODEL AND YEAR SHOULD BE REMOVED FROM OUR ROADS IMMEDIATELY. MANUFACTURER HAS A "SERVICE BULLETIN" OUT ON THE 'POWER STEERING ASSIST'. THEY REFER TO IT AS A SPECIAL COVERAGE ADJUSTMENT. (03/02/2013)

- THE CONTACT OWNS A 2008 PONTIAC G6. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 MPH, THE DRIVER CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER WAS NOT INJURED AND A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING OF THE AIR BAG FAILURE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 90,000. THE VIN WAS UNAVAILABLE. (07/26/2013)

- THE CONTACT OWNS A 2008 PONTIAC G6. THE CONTACT STATED THAT THE DRIVER WAS TRAVELING AT AN UNKNOWN SPEED WHEN THE ACCELERATOR PEDAL BECAME STUCK IN OPEN THROTTLE, CAUSING THE VEHICLE TO ACCELERATE TO 107 MPH. THE VEHICLE ROLLED OVER A DIP IN THE ROAD, LEFT THE ROAD, WENT AIRBORNE, ROLLED OVER FIVE TIMES AND LANDED UPSIDE DOWN ON ITS ROOF. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER WAS FATALLY INJURED. THE MANUFACTURER AS WELL AS WITH THE HIGHWAY PATROL WAS INVESTIGATING THE CRASH. THE MILEAGE AND VIN WERE UNAVAILABLE. (09/16/2012)

- THE CONTACT OWNS A 2008 PONTIAC G6. THE CONTACT STATED THAT THE DRIVER FRONTAL AIR BAG FAILED TO DEPLOY AFTER A VEHICLE CRASHED INTO THE CONTACT DRIVER FRONT WHILE ATTEMPTING TO TURN LEFT. THE CONTACT SUSTAINED INJURIES TO THE CHEST, NECK, AND RIGHT ARM. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO THE TOW-YARD. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 6,000. (08/31/2012)

- DURING A HEAVY RAIN STORM A TRACTOR TRAILER IN FRONT OF ME SLOWED TO PULL OFF THE ROAD. I COULD NOT SEE HIS BRAKE LIGHTS BECAUSE OF THE

RAIN AND REAR ENDED HIM. THE IMPACT WAS STRONG ENOUGH TO BREAK HIS BUMPER BAR OFF (THE PART THAT HANGS DOWN FROM THE ACTUAL BED OF THE TRAILER TO PREVENT YOU FROM GOING BENEATH IT). THERE ARE CLEAR MARKS ON MY FRONT BUMPER WHERE HIS BUMPER HIT. MY AIRBAG DID NOT DEPLOY. I ESTIMATE MY SPEED WAS ABOUT 40MPH ALTHOUGH I SKIDDED INTO HIM SO I WAS SLOWING. I DON'T BELIEVE THAT HE WAS STOPPED BUT WAS MOVING SLOWLY AS HE PULLED OVER. I DONT KNOW HOW OFTEN THIS OCCURS, ONCE WAS ENOUGH FOR ME. MY VEHICLE IS A TOTAL LOSS SO NO ACTION IS BEING TAKEN TO CORRECT THE FAILURE. (07/03/2011)

- WAS INVOLVED IN AN ACCIDENT WHERE THE CAR HYDROPLANED AND HIT A SIDE RAIL ON A BRIDGE. THE FRONT OF THE CAR IS MESSED UP BUT MY AIRBAGS DID NOT DEPLOY. (07/06/2010)

- I HAVE HAD 2 MAJOR FRONT END COLLISIONS IN MY 2008 PONTIAC G6. FIRST WRECK WAS IN '08 I SWERVED FROM A DEER, WENT IN A DITCH GOING OVER 60 MPH AND THE AIRBAG FAILED TO DEPLOY. THEY FIXED THE CAR AND GAVE IT A NEW FRONT END. YESTERDAY I WAS IN AN ACCIDENT, REARENDED A GRAND MARQUIS, THE CAR I HIT ONLY HAD A SCRATCHED BUMPER. MY G6 WAS COMPLETELY SMASHED IN, HOOD BENT UP, LIGHTS BROKEN, MECHANICAL PARTS PUSHED BACK. I HIT THE CAR IN FRONT OF ME GOING 45-50 MPH AND AIR BAGS FAILED TO DEPLOY AGAIN. (04/05/2010)

- MY DAUGHTER WAS DRIVING A 2007 PONTIAC G-6. SHE WAS GOING AROUND A CURVE ENTERING THE EXPRESS WAY AND THE CAR DID NOT RESPOND TO HER TURNING THE WHEEL THEREFORE THE CAR WENT INTO THE DITCH. THE AIR BAGS DID NOT DEPLOY. CONSIQUENTLY SHE FRACTURED HER BACK. SEPTEMBER 2007  IN NOVEMBER 2007 MY SON WAS DRIVING A 2008 PONTIAC G-6. HE WAS GOING AROUND A CURVE THE CAR DID NOT RESPOND. THE CAR ROLLED OVER HIT A TREE AND KILLED MY SON. THE AIR BAGS DID NOT GO OFF. (11/03/2007)

26.     New GM received customer complaints of airbag failures in front end collisions.

Neither Old GM nor New GM ever issued a recall related to the failure of the airbags to deploy in

a crash with frontal impact.

27.     Throughout the years in which it received these complaints, Old and New GM

marketed GM brand vehicles as safe. For example, in a section called "Safety," Old GM's

Chevrolet website stated:

**OUR COMMITMENT**

"Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind."

28.    Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, "Putting people first," and, "Saturn. People First." Saturn's print ad campaign featured advertisements with statements such as the following: "Need is where you begin. In cars, it's about things like reliability, durability and, of course, safety. That's where we started when developing our new line of cars." In sum, in order to increase sales, Old GM touted the safety of its vehicles, and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell "certified pre-owned cars" that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public, explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

29.    Plaintiff's vehicle was equipped with driver and front passenger frontal airbags. However, these airbags did not deploy during the subject collision even though there was a frontal impact.

30.    Plaintiffs injuries were also caused by the failure of airbag to deploy in this collision.

31.    The defects in the design, manufacture and/or assembly of the Subject Vehicle's safety components and the negligence of GM as described herein, resulted in neither of the frontal airbags being deployed.

32.    Prior to February 1, 2016, Old GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the Subject Vehicle, which contained design defects when it left the possession of Old GM.

33.    At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

34.    Notwithstanding this duty, GM carelessly, recklessly and negligently designed, manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

35.    GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

36.    All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects:  (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for

which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

37.    Because of its defective design, manufacture and production, especially the airbag system/ passenger restraint system in the Plaintiff's vehicle, this vehicle was inherently dangerous in the event of foreseeable frontal collisions.

38.    GM breached its duties owed to Plaintiff in that it failed to recall and retrofit Plaintiff's vehicle.

39.    Plaintiff was not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System/Passenger Restraint System.

**CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFF UNDER TEXAS LAW**

**COUNT 1 – Negligence**

40.    The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

41.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, as well as via books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, certain Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiff.

42.    Old GM and New GM owed Named Plaintiff a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiff.

43.    Old GM and New GM owed the Named Plaintiff a duty to detect known safety defects in GM vehicles.

44.    Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect,

including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

45.    Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

46.    Old GM and New GM knew that their customers, such as the Named Plaintiff, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

47.    Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiff and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiff and other drivers to take the reasonable measures listed above.

48.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liability of Old GM assumed by New GM.

49.    Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiff by failing to provide appropriate notice of and repair procedures for

the Named Plaintiff's Defective Vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

50.     It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiff and other drivers would be endangered.

51.     The Named Plaintiff's injuries were reasonably foreseeable to Old GM and New GM.

52.     The Named Plaintiff could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

53.     Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

54.     As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT II - Strict Liability (TX CPRC §82)**

55.     The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

56.     Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

57.     The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

58.     The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiff.

17

59.    The defects set forth herein caused the Named Plaintiff's injuries.

60.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiff.

61.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liabilities of Old GM assumed by New GM.  Independent of any failures by Old GM as described herein, New GM was negligent and breached its duties owed to the Named Plaintiff as described herein.

62.    Plaintiff would show in the alternative that there was a manufacturing defect in Plaintiff's vehicle concerning the airbag system/passenger restraint system.

63.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Marketing Defect**

64.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System

/Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. New GM is also liable to Plaintiff for its independent, post- Sale negligence.

65.    Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiff's vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiff, the public, and NHTSA.

66.    In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

67.    Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning instructions. When Old GM learned that the Plaintiffs' vehicle was defective, it had a continuing duty to warn Plaintiff of the existence of the defect, including after the original sale of the vehicle.

68.    New GM was also negligent in providing warnings about Plaintiffs' vehicles and unreasonably concealing the design, manufacturing, and informational defects that New GM knew existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for safety-related defects and warn Plaintiff, the public, and NHTSA about safety- related defects in Old GM vehicles.   This duty is based on the direct and continuing  relationship between New GM

and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn owners of Old GM vehicles, including Plaintiff, of safety defects and did, in fact, warn owners of Old GM vehicles, including Plaintiff, of the safety defects (though the warning arrived years later than it should have and unreasonably minimized the risk of harm.

69.    In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

70.    Thus, independent of any failures by Old GM and New GM as described herein, New GM breached its duties to Plaintiff by failing to provide appropriate notice of and repair procedures for the Airbag System/Passenger Restraint System defects in Plaintiff's vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

71.    Old GM's and New GM's negligence proximately caused the injuries and damages sustained by Plaintiff, as set forth herein. New GM's negligence in manufacturing and selling a vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the statutes and regulations that required Old GM and New GM to recall Plaintiffs' vehicles for safety-related defects proximately caused Plaintiffs' inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

72.    New GM is liable for compensatory damages based on Old GM's conduct and based on New GM's own independent conduct. New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

73.     The Named Plaintiff prays for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

74.     As a direct and proximate result of New GM's wrongful conduct, Plaintiff has been (and continues to be) damaged in the form of: (a) past and future pain and suffering; (b) past and future physical impairment; (c) past and future physical disfigurement; (d) past and future mental anguish; (e) past and future loss of consortium and/or loss of services; (f) past and future loss of income and/or lost earning capacity; (g) past and future reasonable and necessary medical expenses; and (h) past and future loss of enjoyment of life' (i) loss of function; (j) prospective medical care and medication costs; and (k) property damage to his vehicle sustained in the crash.  All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

75.     Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be determined).

**JURY DEMAND**

76.     The Named Plaintiff requests a trial by jury.

**PRAYER**

77.     For the foregoing reasons, the Named Plaintiff prays that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant for actual damages, as alleged, together with pre-judgment interested

(from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiff may be entitled at law or in equity.

Dated: April 27, 2018

RESPECTFULLY SUBMITTED,

/s/ *Mitchell A. Toups*
Mitchell A. Toups (TX Bar # 20151600)
WELLER, GREEN, TOUPS & TERRELL, LLP
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
Email:  matoups@wgttlaw.com

James R. Dugan, II
David Scalia
Lanson Bordelon
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

Gregory K. Evans (TX Bar  No. 24002065)
Law Offices of Gregory K. Evans, PLLC
3900 Essex, Suite 690
Houston, TX  77027
(713) 840-1299
Facsimile:  (281) 254-7886
Email:  greg@gevanslaw.com

***Attorneys for Plaintiffs***